# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD ROBERT STANGELAND,<br><br>Defendant. | No. CR08-4043-MWB<br><br>**SUPPLEMENTAL REPORT AND RECOMMENDATION ON MOTION TO DISMISS** |

On June 11, 2008, the undersigned filed a Report and Recommendation (Doc. No. 10) on the defendant's motion to dismiss (Doc. No. 8), recommending the motion be denied. After reviewing the defendant's objections to the Report and Recommendation, Judge Mark W. Bennett remanded the motion to the undersigned on June 18, 2008, for an evidentiary hearing. (Doc. No. 13) An evidentiary hearing was held on July 25, 2008, at which Assistant U.S. Attorney Kevin Fletcher appeared on behalf of the plaintiff (the "Government"), and the defendant Donald Robert Stangeland appeared in person with his attorney, Robert Tiefenthaler. The only evidence offered by the parties was the testimony of the parties' attorneys, who offered their recollections of the events leading to the court's *sua sponte* dismissal of the indictment in Case No. CR07-4086-MWB. The circumstances leading to the court's dismissal of the indictment in the prior case are set forth in the initial Report and Recommendation and will not be repeated here.

The court's *sua sponte* dismissal of the prior case was without prejudice. In the present motion, Stangeland has asked the court to consider whether the prior dismissal should have been with or without prejudice. The order dismissing the prior case without prejudice was not a final, appealable order. *See United States v. Holub*, 944 F.2d 441, 441-42 (8th Cir. 1991); *United States v. Lanham*, 631 F.2d 356, 357-58 (4th Cir. 1980). Stangeland retains the right to appeal that order if he is convicted in the present case. *See id.* Therefore, the court finds it is appropriate to consider, at this stage of the proceedings, whether the prior dismissal should have been with or without prejudice.

Congress has specified factors the court must consider in determining whether a case should be dismissed with or without prejudice. Because the court has characterized the *sua sponte* dismissal as falling into the same category as a motion to dismiss made by the defendant, the factors specified in 18 U.S.C. § 3162(a)(2) are applicable here, to-wit:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice.

18 U.S.C. § 3162(a)(2). Neither dismissal with prejudice nor dismissal without prejudice is preferred; rather, the court must perform a balancing test, carefully applying the factors set forth in section 3162. *See United States v. Taylor*, 487 U.S. 326, 335 & n.8, 108 S. Ct. 2413, 2418-19 & n.8, 101 L. Ed. 2d 297 (1988) (citing, *inter alia*, *United States v. Kramer*, 827 F.2d 1174 1176 (8th Cir. 1987)). When the district court considers the statutory factors properly, its factual findings are not clearly in error, and the court explicates its reasons for dismissing the case with or without prejudice, "the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Taylor*, 487 U.S. at 337, 108 S. Ct. at 2421; *see United States v. Moss*, 217 F.3d 426, 430-31 (6th Cir. 2000).

Because the order dismissing the prior case without prejudice did not contain a discussion of the four factors specified in section 3162(a)(2), the undersigned will discuss those factors here. The Government agrees it is appropriate to consider the statutory factors at this stage of the proceedings. *See* Doc. No. 9-2, p. 3. Notably, the following discussion of the statutory factors applies only to the offense as charged in the first indictment, filed November 28, 2007, in Case No. CR07-4086-MWB.

The first factor the court must consider is the seriousness of the offense. Stangeland was charged with "knowingly and in reckless disregard of the fact that ten aliens had come to, entered, or remained in the United States in violation of the law, transported or moved

the ten aliens within the United States to various job sites in Monona County, Iowa, in furtherance of such violation of the law. . . in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i)." (Doc. No. 1 in CR07-4086-MWB) If convicted, Stangeland faced a penalty of up to ten years in prison and a fine of up to $250,000. The severity of these penalties indicates the crime is one Congress considers to be serious, weighing in favor of dismissal without prejudice.

The second factor is the facts and circumstances of the case leading to the dismissal. The parties' attorneys disagree on the exact chronology of events, particularly with regard to when Mr. Tiefenthaler first talked with Mr. Fletcher about the fact that no trial date had been scheduled. It appears the failure to schedule the trial initially was the result of an administrative error by court staff. The court's usual procedure is to schedule trial immediately following a defendant's arraignment. In this instance, Stangeland filed a written arraignment form, and the case inadvertently was not scheduled for trial. Thereafter, no one – including court staff and both parties' attorneys – noticed the case had not been scheduled for trial until Mr. Tiefenthaler brought the matter to the court's attention. By the time he did so, the time to bring Stangeland to trial under the Speedy Trial Act already had expired. The speedy trial violation was not the result of any tactical gamesmanship or bad-faith actions on the Government's part. Further, Stangeland was on pretrial release and was not prejudiced unduly by the delay. These facts weigh in favor of dismissal without prejudice.

The third factor is impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. In *Taylor*, the Supreme Court observed, "It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." *Taylor*, 487 U.S. at 342, 108 S. Ct. at 2422. In this case, there is no evidence of governmental misconduct that warrants the sanction of prohibiting reprosecution. Despite the adverse impact on the administration of justice that results whenever the Act's requirements are not met, *see United States v. Moss*, 217 F.3d 426,

432 (6th Cir. 2000), under the facts of this case, the third statutory factor does not weigh in favor of either dismissal with prejudice or without prejudice.

Thus, consideration of the statutory factors leads to the conclusion that the court acted properly in dismissing the prior case without prejudice. As the undersigned noted in the previous Report and Recommendation, Stangeland benefitted from the *sua sponte* dismissal, and the outcome should be the same as a dismissal on the defendant's own motion; i.e., the speedy trial clock should begin to run anew upon the filing of the new indictment on May 2, 2008.

Stangeland also offers a minimal argument that his Sixth Amendment right to a speedy trial has been violated. In *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the Supreme Court identified four factors to consider in determining whether a defendant's constitutional right to a speedy trial has been violated: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.*, 407 U.S. at 530, 92 S. Ct. at 2192. The Court noted there is no "talismanic qualit[y]" to these factors, and none of them is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*, 407 U.S. at 533, 92 S. Ct. at 2193. Thus, the Court recognized that "courts must still engage in a difficult and sensitive balancing process" which, because it deals "with a fundamental right of the accused, . . . must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id.*

The Court elaborated on the four factors, and the relative weight each of them might bear in the balancing process, as follows:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that

will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. [Footnote omitted.] To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or over-crowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

. . . . Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant

> past. Loss of memory, however, is not always reflected in the
> record because what has been forgotten can rarely be shown.

*Barker*, 407 U.S. at 530-32, 92 S. Ct. at 2192-93.

Stangeland merely cites *Barker* in his briefs; he does not analyze the *Barker* factors in any detail, nor would such an analysis support his argument. He has failed to make even the threshold allegation to trigger a speedy trial analysis under the Sixth Amendment. *See Doggett v. United States*, 505 U.S. 647, 651-52, 112 S. Ct. 2686, 2690, 120 L. Ed. 2d 520 (1992*) (*"Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay[.]"). Similarly, application of the other *Barker* factors fails to support Stangeland's bare-bones argument that his Sixth Amendment right to a speedy trial was violated.

None of the evidence or arguments offered by the parties here convinces the undersigned to alter the conclusion set forth in the first Report and Recommendation; i.e., that the speedy trial clock began to run anew as of the new indictment on May 2, 2008, and Stangeland's motion to dismiss should be denied.

The undersigned therefore respectfully recommends that Stangeland's motion to dismiss for violation of his speedy trial rights be denied. Objections to this Report and Recommendation must be filed by **August 4, 2008**. Responses to objections must be filed by **August 8, 2008**.

**IT IS SO ORDERED.**

**DATED** this 29th day of July, 2008.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT