**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DONALD ROBERT STANGELAND,

        Defendant.

No. 08-CR-4043-LRR

**ORDER**

---

*TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **RELEVANT PRIOR PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.  **TRIAL EVIDENCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     A.    *Special Agent Ricardo Rocha* . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     B.    *Special Agent Isra Harahap* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
     C.    *Terri Horsley* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
     D.    *Luis Colorado-Grajales* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
     E.    *Hector Murrieta-Paredes* . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
     F.    *Felix Paredes-Leon* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

IV.  **MOTION FOR JUDGMENT OF ACQUITTAL** . . . . . . . . . . . . . . . . . . **15**
     A.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
     B.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
          1.    *Count 1* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
               a.   *First element* . . . . . . . . . . . . . . . . . . . . . . . . . **16**
               b.   *Second element* . . . . . . . . . . . . . . . . . . . . . . . **20**
          2.    *Count 3* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**
          3.    *Count 4* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**
     C.    *Consistent Verdicts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **34**
     D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **36**

V.   **MOTION FOR NEW TRIAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **36**

**VI.    MOTION TO CORRECT RECORD** . . . . . . . . . . . . . . . . . . . . . . . . . **38**

**VII.   CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **38**

## I. INTRODUCTION

The matters before the court are Defendant Donald Robert Stangeland's oral Motion for Judgment of Acquittal ("Oral Motion"), "Motion for Judgment of Acquittal or Alternative Motion for New Trial"("Motion") (docket no. 81) and "Motion to Correct Record or Consider New Additional Evidence" ("Motion to Correct") (docket no. 82) (collectively, the "Motions").

## II. RELEVANT PRIOR PROCEEDINGS

On April 24, 2008, a grand jury returned a five-count Indictment (docket no. 2) against Defendant. Count 1 charged Defendant with Transporting and Aiding and Abetting the Transportation of Illegal Aliens for the Purpose of Commercial Advantage or Private Financial Gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(II) and 1324(a)(1)(B)(i) and 18 U.S.C. § 2. Counts 2 through 4 charged Defendant with Harboring Illegal Aliens for the Purpose of Commercial Advantage or Private Financial Gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i). Count 5 charged Defendant with Transporting Illegal Aliens for the Purpose of Commercial Advantage or Private Financial Gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i). On May 2, 2008, Defendant pled not guilty to all five counts.

From December 1, 2008 through December 4, 2008, the court held a jury trial. At the conclusion of the government's case, Defendant made the Oral Motion and asked the court to acquit him on all counts. The court reserved ruling on the Oral Motion.

On December 4, 2008, the jury found Defendant guilty of Counts 1, 3 and 4 and not guilty of Counts 2 and 5. With respect to Count 1, the jury found Defendant aided and abetted the transportation of illegal aliens but did not transport them.

On February 9, 2009, Defendant filed the Motion. On the same date, the government filed a Resistance (docket no. 80) to the Motion. On February 10, 2009, Defendant filed the Motion to Correct. On March 25, 2009, the government filed a Response (docket no. 86) to the Motion to Correct. On April 7, 2009, Defendant filed a Reply (docket no. 88) in support of the Motion to Correct.

On April 10, 2009, the court held a hearing ("Hearing") on the Motions. Assistant United States Attorney Kevin Fletcher represented the government. Attorney Robert Tiefenthaler represented Defendant, who was personally present. The court finds the Motions fully submitted and ready for decision.

## III. TRIAL EVIDENCE

On September 26, 2007, Iowa State Patrol Trooper Jonathan Salyers stopped a van along Highway 175 in Monona County, Iowa, for traveling above the posted speed limit. The van had the logo, phone number and US DOT number for Allen Steel Construction on its back door. Trooper Salyers approached the van. Felix Paredes-Leon, the driver of the van, produced a driver's license issued from a Mexican state. He was not able to produce United States identification. The van also contained eight other passengers who did not have United States identification. Trooper Salyers escorted Felix Paredes-Leon to his cruiser. However, Trooper Salyers could not communicate with Felix Paredes-Leon or any of the other occupants of the van, because they spoke Spanish and did not speak English. Trooper Salyers spoke English and did not speak Spanish.

Due to the language barrier, Trooper Salyers contacted United States Immigration and Customs Enforcement ("ICE"). ICE Special Agent Ricardo Rocha ("S/A Rocha") agreed to meet Trooper Salyers at the Monona County Jail. S/A Rocha speaks English and Spanish.

### A. Special Agent Ricardo Rocha

Since 1988, S/A Rocha has worked as a detention officer, immigration inspector,

immigration examiner and as a Special Agent. S/A Rocha has training and experience in identifying legitimate immigration documents.

According to S/A Rocha, a legal permanent resident is a person who has a green card or a permanent resident card and resides in the United States. An illegal alien is a person from a country other than the United States who does not have the appropriate documentation to be in the United States. A person may present a resident alien card or lawful permanent resident card to lawfully enter the United States. A person who is not a United States citizen or who is in the country illegally may not have a Social Security number. In order to have the appropriate documentation, an alien would have to apply to an immigration office or embassy.

Typically, when S/A Rocha encounters a person whom he suspects may not be in the United States legally, he asks him for his name, date and place of birth and identification. If he suspects a person may be working in the United States illegally, he obtains that person's Employment Eligibility Verification I-9 Form ("I-9") and any other documents the person may have presented to an employer, such as an employment application or tax document. Every employee in the United States is required to complete an I-9.

When S/A Rocha arrived at the Monona County Jail, he interviewed the van's occupants and asked them for identification. Felix Paredes-Leon provided a driver's license issued from a state in Mexico and a Mexican voter registration card. S/A Rocha identified the other occupants of the van as Hector Murrieta-Paredes, Luis Colorado-Grajales,[1] Alan Barradas-Flores, Felipe Paredes-Leon, Jorge Paredes-Islas, Jose Paredes-Leon, Juan Castillo-Rojas and Pastor Sosa-Paredes. S/A Rocha then asked each of the nine men for documentation to prove that they were in the United States lawfully. None

---

[1] Luis Colorado-Grajales's name is spelled differently throughout the exhibits and trial transcript.

4

of the men were able to provide such documentation. All of the occupants either had driver's licenses issued from states in Mexico or Mexican voter registration cards. S/A Rocha confirmed that the nine van occupants were in the United States illegally.

S/A Rocha investigated the van's owner. S/A Rocha found a South Dakota vehicle registration card (Government's Exhibit 1) in the van that indicated the van belonged to Darold Stangeland. He conducted surveillance of other Allen Steel Construction vehicles. S/A Rocha followed the vehicles from the Winnavegas Inn in Sloan, Iowa, to a work site in Onawa, Iowa. Between September 26, 2007 and October 17, 2007, S/A Rocha observed (1) a white pickup truck with the logo, phone number and DOT number of Allen Steel Construction, (2) a green Suburban and (3) a large Dodge van carrying Allen Steel Construction employees.

S/A Rocha obtained billing and rental records from Terri Horsley, the manager of the Winnavegas Inn. Based on these records, S/A Rocha determined that Allen Steel Construction was renting rooms at the Winnavegas Inn for the workers and that Defendant was the "local person in charge." Transcript ("Tr.") (docket nos. 73 and 74), at 80. Allen Steel Construction rented approximately ten rooms. S/A Rocha used this information to obtain a search warrant for the rooms.

On October 17, 2007, law enforcement agents executed the search warrant. ICE Agents, with the help of an Iowa State Patrol Trooper, stopped the white pickup truck. They identified the driver of the truck as Defendant. Another occupant of the vehicle was identified as Jose Alfredo Sandoval-Rincon. S/A Rocha determined that Jose Alfredo Sandoval-Rincon was in the United States illegally. The truck was registered to Allen Steel Construction. An insurance card (Government's Exhibit 4-A4) found in the vehicle had Defendant's name, as well as an address, birthdate and phone number hand written on it.

Also found inside the van were two receipts for wire transfers (Government's

Exhibits 4-B1 and 4-B2) from Jose Alfredo Sandoval-Rincon to recipients in Mexico, a receipt (Government's Exhibit 4-C) from the Maple Motel in Mapleton, Iowa, and payment records (Government's Exhibits 4-F-1 through 4-F-7) from the Winnavegas Inn. S/A Rocha later determined that Defendant stayed at the Maple Motel in 2007 with the nine unlawful aliens arrested on September 26, 2007. Agents also found a log (Government Exhibit 4-E) listing certain employees working on a bin. The log listed Defendant as well as a number of the unlawful aliens arrested on September 26, 2007.

S/A Rocha also participated in the search of three rooms at the Winnavegas Inn. It appears all of the employees' belongings were consolidated into three rooms.

Agents found Government Exhibits 5-A-1 through 5-A-4 in room 211. Government Exhibit 5-A-1 is Jose Alfred Sandoval-Rincon's Employee Withholding Allowance Certificate ("W-4"). Government Exhibit 5-A-2 is Jose Alfredo Sandoval-Rincon's pre-employment drug screening. Government Exhibit 5-A-3 is a document listing Jose Alfredo Sandoval-Rincon's rate of pay, tax payments, cash advances and balance of wages owed. Government Exhibit 5-A-4 appears to be the second page of an unknown W-4.

Agents found Government Exhibits 5-B-1 through 5-B-7 in room 107. These exhibits include money transfers from the unlawful aliens arrested on September 26, 2007 to recipients in Mexico. Government Exhibit 5-B-6 consists of copies of a counterfeit resident alien card, a counterfeit social security card, passport folder and passport photos. The social security card and permanent resident card bear the name "J. Alfredo Sandoval." Government Exhibit 5-B-7 contains the reverse side of the copies of the passport folder, permanent resident card and social security card.

Law enforcement agents found Government Exhibits 6A-1 through 7-A-9 in room 203. They also found Defendant's briefcase. Exhibit 6A-1 is the certificate of title for the van stopped on September 26, 2007. A number of the exhibits found in this room are handwritten notations listing employees, their hours, earnings, deductions and advances.

The notes are organized in notebooks by location and job. The notes go back to 2006 and end in September of 2007. Again, a number of the employees listed in these logs are the individuals arrested on September 26, 2007. S/A Rocha pointed out the term "Mexicans" was used to identify a group of the employees.

Also found in room 203 were more receipts for money transfers from employees to recipients in Mexico, a W-4 for Jose Alfredo Sandoval-Rincon, hotel payment receipts, a list of employees and employment forms and a letter to Defendant instructing him to have certain employees fill out employment forms. The list of employees, Government Exhibit 6-J, is undated. It notes "photo ID," "ID," "Driver's license" or "SS#" next to each name. S/A Rocha opined that this list meant that these employees needed to complete the forms and provide the indicated form of identification. Defendant's name is on this list along with "John B.," "John Knight," "Ozzie" and "9 New Guys." Government Exhibit 6-G is an undated and unsigned letter to Defendant instructing him to have certain employees, including "two Mexicans, Tony, Corey and Crispy," fill out W-4s and I-9s. It does not instruct Defendant to obtain proof of identification from the employees.

S/A Rocha also subpoenaed Allen Steel Construction's I-9s. S/A Rocha was not able to locate an I-9 for Luis Colorado-Grajales or Hector Murrieta-Paredes. He was able to locate an I-9 for Felix Paredes-Leon.

On October 17, 2007, S/A Rocha interviewed Defendant. Defendant told S/A Rocha that he was working at the Western Iowa Co-Op for Allen Steel Construction. Defendant worked for Allen Steel Construction for three to four years. He had fifteen or sixteen employees.[2] When asked if he filled out I-9s and W-4s for each of these employees, Defendant responded that he had. S/A Rocha also stated Defendant answered

---

[2] The record is unclear as to whether Defendant supervised, employed or contracted with these employees.

affirmatively when asked if he obtained identification documents for all the employees.[3] When asked if he employed illegal aliens, Defendant stated that he did not. Defendant told S/A Rocha that he cashed checks for his employees.

On cross-examination, Attorney Tiefenthaler pointed out inconsistencies between S/A Rocha's grand jury and trial testimony. For example, S/A Rocha told the grand jury that, in his experience, some employers do not require employees to present documents when they hire them. However, at trial, S/A Rocha said this was not correct. Many representations S/A Rocha made to the grand jury to support the Indictment were not true. S/A Rocha told the grand jury that all of the nine aliens arrested on September 26, 2007, not just some of them, said that Defendant hired them on the spot at a hotel and that they were paid in cash. In fact, at least three of the illegal aliens—Felix Paredes-Leon, Felipe Paredes-Leon and Jose Manuel Paredes-Leon—worked for Allen Construction before they were sent to Defendant's crew and were not hired by Defendant. Further, Luis Colorado-Grajales, Hector Murrieta-Paredes and Felix Paredes-Leon all testified they were paid at least once by check. Further, S/A Rocha told the grand jury that the illegal aliens always rode separately from the white employees. At trial, S/A Rocha initially stated that this is what he believed to be true at the time he testified in grand jury proceedings. However, at trial, he testified that, at the time he testified before the grand jury, he "assumed" he knew that Hispanic individuals rode with Defendant. Tr. at 154.

S/A Rocha told the grand jury that the illegal aliens were not taxed. This was not true. He later found out, however, after he subpoenaed the I-9s from Allen Steel Construction, that taxes were withheld from their paychecks. Certain W-2 forms also indicate taxes were withheld from the paychecks of Luis Colorado-Grajales, Hector

---

[3] Defendant points out in the Motion to Correct that this statement is inconsistent with S/A Rocha's grand jury testimony. The court reviewed the audio recording of the trial and finds the transcript accurately reflects S/A Rocha's trial testimony.

Murrieta-Paredes and Felix Paredes-Leon. S/A Rocha also learned from reviewing these I-9s that the section requiring proof for verification of identity was not filled out for some of the employees until after the September 26, 2007 arrests. This was true for both white and Hispanic employees. It also appears from these forms that Bruce Allen, the owner of Allen Steel Construction, was the person verifying identities on at least some of the I-9s—not Defendant. S/A Rocha agreed with Attorney Tiefenthaler that he "was trying to charge [Defendant] in this case to try to get some leverage against Mr. Allen." Tr. at 166.

S/A Rocha testified that, after the September 26, 2007 arrests, Allen Steel Construction recruited nine new employees. Correspondence between Bruce Allen and Defendant indicates that they tried to obtain the proper documentation to ensure the new employees were lawfully in the United States. Bruce Allen even held a meeting for his supervisors to teach them how to fill out the employment forms. S/A Rocha also testified that Defendant incorporated his own business, Donnie Stangeland Construction, Inc., on April 30, 2007.

### B. *Special Agent Isra Harahap*

Special Agent Isra Harahap ("S/A Harahap") has worked for ICE since March of 2004. Previously, he was a police officer at Iowa State University for nine years. He trained at the Federal Law Enforcement Academy in Glynco, Georgia, for twelve weeks. This training consisted of basic training to become a criminal investigator. He also completed ICE training where he was specifically instructed on his duties as an ICE Special Agent. This training included learning about immigration law, naturalization and citizenship proceedings and requirements and immigration-related fraud. He has training and experience in worksite enforcement of immigration laws and document fraud. As an ICE Special Agent, S/A Harahap deals with the movement of people (immigration) and goods (customs).

S/A Harahap testified that employers have been required to obtain I-9s for employees since November of 1986.  The employee completes the first section.  In the second section, the employer indicates that it has verified the employee's information is correct and the form is properly completed.  The documents presented by the employee should show the employee's identity and that he or she is eligible to work in the United States.  Either the employer or the employer's authorized representative may verify employability.  The second section must be completed within three days of the employee's hiring.  S/A Harahap indicated that the present case is "confusing" in terms of who was responsible for obtaining completed I-9s.  Tr. at 166.  Some of the undocumented workers said that they worked for Defendant but were paid by Bruce Allen, and others claimed that they worked for Allen Steel Construction.  The government provides interpreters to assist employees in filling out these forms if the employee does not speak English.  There is also a national customer service center that employers may call for assistance.

S/A Harahap testified that employers are not required to scrutinize an employee's identification to determine if it is valid, but they should use common sense.  Jose Alfredo Sandvoal-Rincon's social security card, Government Exhibit 5-B-6, is fraudulent.  S/A Harahap could tell it was fake because both the font and location of the social security number were different from a valid card.  He recommends comparing cards with a card known to be valid.

 Independent contractors are responsible for completing I-9s for their employees.  The person hiring the independent contractor may also be responsible if, for example, he or she knew that the independent contractor hired undocumented workers.  Employers are required to keep I-9s for either three years or one year after the termination of employment, whichever is later.  Employers must also make I-9s available to the Department of Homeland Security upon request.  Employers may face civil penalties if they fail to properly complete I-9s.

S/A Harahap has worked with local employers to train and assist them in complying with the I-9 requirements. He also has a book that gives more descriptive instructions for completing the forms.

### C. Terri Horsley

Terri Horsley is a general manager at the Winnavegas Inn and is in charge of the hotel's bookkeeping. Terri Horsley is familiar with the hotel's practice of renting rooms to companies. When a company wants to rent a group of rooms for its employees, the hotel typically communicates with a single contact person for billing or other issues. The contact person signs a weekly rental agreement.

Terri Horsley provided numerous folio invoices for Allen Steel Construction. These documents itemize the dates of arrival and departure, charges and payments for each room (Government Exhibits 2-A through 2-EE). The person in charge of the group typically signs these forms. Terri Horsley stated that Defendant possessed the credit card used to pay for these rooms.

Government Exhibits 2-P through 2-S are weekly rental agreements. These documents set forth the arrival date, anticipated departure date and the terms of each rental. Defendant and a desk clerk signed each agreement.

Government Exhibits 2-T and 2-U are registration forms that guests are required to sign upon check-in. Each registration form shows the number of adults and children per room. Each exhibit indicates that there were two adults and no children in each room. Defendant signed both exhibits.

### D. Luis Colorado-Grajales

Luis Colorado-Grajales is a twenty-two year old citizen of Mexico. Luis Colorado-Grajales entered the United States illegally in April of 2007 with Felipe Paredes-Leon. Felipe Paredes-Leon told Luis Colorado-Grajales about a job in Flandreau, South Dakota. Luis Colorado-Grajales traveled to Flandreau to meet Defendant. He understood

11

Defendant would hire him to work. Luis Colorado-Grajales traveled to Mapleton in an Allen Steel Construction van with eight other workers. Defendant rented a hotel room for him and the other workers in Mapleton.

Defendant had Luis Colorado-Grajales fill out an "application." Tr. at 191. Luis Colorado-Grajales started working for Allen Steel Construction before he filled out any paperwork. The application asked him how many dependents he had. Luis Colorado-Grajales provided a false social security number and address on the form. The form was dated May 25, 2007. He never showed Defendant any identification. His only form of identification at the time he applied was a voter registration card from Mexico. Luis Colorado-Grajales worked in Mapleton for about fifteen days. He saw Defendant every day. He was paid in cash for his work in Mapleton.

Defendant gave the employees $20 cash on working days for living expenses. Luis Colorado-Grajales believed Defendant was keeping track of his hours. He also believes he was paid the right amount for his work.

Luis Colorado-Grajales also worked with Defendant in Sioux Falls, South Dakota. He was paid by check for his work in Sioux Falls. Defendant took him to a bank to cash his paychecks. He stated that he did not converse much with Defendant because of the language barrier. Felipe Paredes-Leon communicated between Defendant and the other Spanish-speaking employees.

Luis Colorado-Grajales had been working in Onawa, Iowa, for four or five days before the arrests on September 26, 2007. While working in Onawa, they stayed at the Winnavegas Inn. Felix Paredes-Leon was driving the van when it was stopped. Luis Colorado-Grajales was in the van along with seven other passengers. He was held in custody for two months and two days before he was released. Upon release, he applied for and was granted a permit that allows him to work legally while his immigration case is pending.

### E. Hector Murrieta-Paredes

Hector Murrieta-Paredes is a twenty-seven year old citizen of Mexico. He entered the United States illegally in March of 2007 and eventually made his way to Iowa. Hector Murrieta-Paredes learned of the job with Allen Steel Construction from Felipe Paredes-Leon.

An Allen Steel Construction van picked up Hector Murrieta-Paredes in Eagle Grove and took him to Mapleton. Defendant rented hotel rooms for Hector Murrieta-Paredes and the other workers in Mapleton. Defendant communicated with Hector Murrieta-Paredes through Felipe Paredes-Leon.

Mr. Murrieta-Paredes stated that he had to complete an application when he started working. He initially testified that he made up a social security number but testified on cross-examination that he put down his name while Felipe Paredes-Leon and John Ny completed the rest of the form. At this time, Hector Murrieta-Paredes had a driver's license issued from a state in Mexico. He did not have United States identification.

Hector Murrieta-Paredes worked for Allen Steel Construction for approximately four to five months. During this time, he saw Defendant every day. He rode in an Allen Steel Construction van to the jobsite and back to the hotel. Defendant provided the tools. Hector Murrieta-Paredes was paid in cash and was once paid by check. Defendant helped him cash the check. Hector Murrieta-Paredes did not have a bank account. He believes that he was treated fairly and that all workers were treated the same.

Hector Murrieta-Paredes was held in immigration custody for one month following his September 26, 2007 arrest. Upon release, he applied for a work permit. He is currently awaiting an immigration hearing.

### F. Felix Paredes-Leon

Felix Paredes-Leon is a twenty-seven year old citizen of Mexico. He served approximately one year in prison for a conviction for transporting illegal aliens stemming

from his September 26, 2007 arrest. He is being held as a material witness awaiting deportation to Mexico.

Felix Paredes-Leon entered the United States illegally in 2001. He first worked for Allen Steel Construction in 2004. He learned of the job with Allen Steel Construction through another citizen of Mexico who was working for the company. He understood Bruce Allen to be the owner of the company. In 2004, Felix Paredes-Leon did not have to complete an application or show identification to be hired. He was paid either by check or cash and taxes were withheld from his paychecks. Later that year, Felix Paredes-Leon quit working for Allen Steel Construction and returned to Mexico.

Felix Paredes-Leon returned to the United States in 2005 and again worked for Allen Steel Construction. This time, he completed an application but did not provide identification. He knew his supervisor as "Grande." Again, he was paid either in cash or by check. He recalls one occasion where someone from Allen Steel Construction went with him to a bank to cash his check because he did not speak any English. Felix Paredes-Leon again returned to Mexico in 2006. He returned to the United States and worked for Allen Steel Construction in May of 2007.

Felix Paredes-Leon's brother, Felipe Paredes-Leon, also worked for Allen Steel Construction prior to working with Defendant. Felipe Paredes-Leon was already working for Allen Steel Construction in Mapleton and told Felix Paredes-Leon to meet him there. He started working for Allen Steel Construction in Mapleton. This time, Defendant gave him an application and "an American" helped him complete it. Court Exhibit 10A at 18. He was not asked for identification but testified that he told Defendant he had a driver's license issued from a state in Mexico. Felix Paredes-Leon is related to a number of other Allen Steel Construction employees. He claims to have no knowledge of whether the other workers were lawfully in the United States. Defendant and Felix Paredes-Leon never discussed his immigration status. Felix Paredes-Leon stated that he does not understand

English.

## IV. MOTION FOR JUDGMENT OF ACQUITTAL

Defendant moves for a judgment of acquittal on Counts 1, 3 and 4 pursuant to Federal Rule of Criminal Procedure 29. Defendant claims that there was insufficient evidence presented at trial to support the jury's guilty verdicts.

### A. Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). It is well-settled, however, that jury verdicts are not lightly overturned. *See, e.g., United States v. Peneaux*, 432 F.3d 882, 889 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found Defendant guilty beyond a reasonable doubt. *Id.* Moreover, the court "must uphold the jury's verdict even where evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). That task is for the jury. *Id.*

### B. Analysis

The court evaluates the sufficiency of the evidence for each count of conviction, in turn.

### 1. *Count 1*

In relevant part, Count 1 charged Defendant with Aiding and Abetting the Transportation of Illegal Aliens for the Purpose of Commercial Advantage or Private Financial Gain. To prove this crime, the government was required to show two elements:

> *One*, someone else committed the crime of transporting an illegal alien; and,

> *Two*, for the purpose of commercial advantage or private financial gain, [D]efendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means . . .[Defendant] consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

Final Jury Instructions (docket no. 63), at 16; 10th Cir. Model Criminal Jury Instr. 2.06 (2006); 18 U.S.C. § 2; *see United States v. Roan Eagle*, 867 F.2d 436, 445 n.15 (8th Cir. 1989) ("The common formulation of the standard of proof for aiding and abetting is that the defendant in some sort associate himself with the venture, that he participate in it as in something he wishes to bring about, and that he seek by his action to make it succeed.") (Citations, internal quotation marks, and punctuation omitted). The court considers each element of Count 1, in turn.

### a. *First element*

In order for the government to prove the first element of Count 1, namely, that someone else committed the crime of transporting an illegal alien, the jury had to find four allegations to be proven:

> *One*, [Felix Paredes-Leon, Hector Murrieta-Paredes, or Luis Colorado-Grajales] was an alien;

> *Two*, [Felix Paredes-Leon, Hector Murrieta-Paredes, or Luis Colorado-Grajales] entered or remained in the United States unlawfully;

> *Three*, the [person Defendant aided or abetted] knew, or recklessly disregarded the fact that [Felix Paredes-Leon, Hector Murrieta-Paredes, or

Luis Colorado-Grajales] was not lawfully in the United States; and

*Four*, for the purpose of commercial advantage or private financial gain, the [person Defendant aided or abetted] transported or moved, or attempted to transport or move [Felix Paredes-Leon, Hector Murrieta-Paredes, or Luis Colorado-Grajales], intending to help him remain in the United States illegally.

Final Jury Instructions at 15; 10th Cir. Jury Instr. 2.03; 8 U.S.C. § 1324(a)(1)(A)(ii); *see United States v. Barajas-Chavez*, 162 F.3d 1285, 1287 (10th Cir. 1999) ("To establish a violation [of 8 U.S.C. § 1324(a)(1)(A)(ii),] the government must prove '(1) the transporting or moving of an alien within the United States, (2) that the alien was present in violation of law, (3) that the defendant was aware of the alien's status and (4) that the defendant acted wilfully in furtherance of the alien's violation of the law.'") (quoting *United States v. Diaz*, 936 F.2d 786, 788 (5th Cir. 1991)).  The jury was further instructed that they must unanimously agree that the four allegations were met as to the same alien. *Cf. United States v. Pereya-Gabino*, No. 08-2869, 2009 WL 1011505 at *6 (8th Cir. Apr. 16, 2009).

The first and second allegations are undisputed.  An "alien" is defined as "a person who is not a citizen or national of the United States."  8 U.S.C. § 1101; Final Jury Instructions at 12; 10th Cir. Jury Instr. 2.02 (2006).  S/A Rocha testified that Felix Paredes-Leon, Hector Murrieta-Paredes and Luis Colorado-Grajales were citizens of Mexico.  S/A Rocha confirmed that they were in the United States unlawfully.  The only forms of identification they had were driver's licenses issued from states in Mexico and voter registration cards from Mexico.  Luis Colorado-Grajales testified that he is a citizen of Mexico and entered the United States illegally in April of 2007.  Hector Murrieta-Paredes testified that he is a citizen of Mexico and entered the United States illegally in March of 2007.

With respect to the third allegation, a reasonable jury could have found Felix

17

Paredes-Leon knew or recklessly disregarded the fact that Hector Murrieta-Paredes and Luis Colorado-Grajales were in the United States unlawfully. Felix Paredes-Leon was not in the United States lawfully. He admitted to making up a Social Security number for the purposes of filling out his employment forms. Although Felix Paredes-Leon testified that he did not have knowledge as to whether the van's occupants were in the United States legally, he was either related to or friends with each of the van's occupants. Felipe Paredes-Leon and Jose Manuel Paredes-Leon are his brothers. Pastor Sosa-Paredes, Jorge Paredes-Isla and Hector Murrieta-Paredes are his cousins. Juan Pablo Castillo is his brother-in-law. Allan Barrradas-Flores and Luis Colorado-Grajales are his friends. He stayed with them at hotels. Felix Paredes-Leon said he came to work for Allen Steel Construction in 2007 because his brother Felipe Paredes-Leon was already working there and told him to join the crew in Mapleton.

With respect to the fourth allegation, the government must prove that, for the purpose of commercial advantage or private financial gain, Felix Paredes-Leon transported or moved, or attempted to transport or move Luis Colorado-Grajales or Hector Murrieta-Paredes, intending to help them remain in the United States illegally. The statute does not specifically define "commercial advantage" or "private financial gain." However, "the meanings of these terms are hardly arcane." *United States v. Zheng*, 306 F.3d 1080, 1085 (11th Cir. 2002). "Terms that are not statutorily defined are ascribed their 'ordinary or natural meaning.'" *Id.* (citing *Nat'l Coal Ass'n v. Chater*, 81 F.3d 1077, 1081 (11th Cir. 1996) (per curiam) (citations omitted)). "[A] common-sense understanding of 'commercial advantage' is a profit or gain in money obtained through business activity." *Id.* at 1086. "[T]he common meaning attributed to 'private financial gain' is an additional profit specifically for a particular person or group." *Id.*

There is no doubt Felix Paredes-Leon transported or moved Luis Colorado-Grajales and Hector Murrieta-Paredes. Felix Paredes-Leon was driving the vehicle Trooper Salyers

stopped. Trooper Salyers identified Felix Paredes-Leon by his driver's license. S/A Rocha interviewed Felix Paredes-Leon and again verified his identity with his driver's license and Mexican voter registration card.

There was sufficient evidence for the jury to find Felix Paredes-Leon transported Hector Murrieta-Paredes and Luis Colorado-Grajales for the purpose of commercial advantage or private financial gain. Felix Paredes-Leon was driving an Allen Steel Construction van. The occupants of the van were all Allen Steel Construction employees. Felix Paredes-Leon testified that, when he worked for Allen Steel Construction, he and the other workers rode between the hotel and work site in a company van. He was in the Mapleton area during this time for the purpose of building a bin. They were paid for their work. The employees were not paid until they finished the job.

Finally, there was sufficient evidence Felix Paredes-Leon transported Hector Murrieta-Paredes and Luis Colorado-Grajales with the intent to help them remain in the United States illegally. There was sufficient evidence for the jury to find that Felix Paredes-Leon's conduct was more than "merely 'incidental' to the presence of [the] illegal aliens in the United States." *United States v. Velasquez-Cruz*, 929 F.2d 420, 422 (8th Cir. 1991) (citations omitted). "[T]he government must prove that the defendant transported an alien with the purpose of supporting or promoting his or her illegal presence." *Id.* (citing *United States v. 1982 Ford Pick-up*, 873 F.2d 947, 951 (6th Cir. 1989)). "[M]ere transportation of a person known to be [an un-documented] alien is not sufficient to constitute a violation of [8 U.S.C. 1324(a)(1)(A)(ii)]." *United States v. Moreno*, 561 F.2d 1321, 1322 (9th Cir. 1977). There is no "ipso facto exemption for those who transport undocumented aliens for employment or as an incident to employment" but, "where the transportation of an alien occurs, there must be a direct or substantial relationship between that transportation and its furtherance of the alien's presence in the United States." *See id.* at 1323 (cited with approval by *Velasquez-Cruz*, 929 F.2d at 423 ("Thus it appears that

19

our *Chevrolet* decision[, *United States v. One 1982 Chevrolet Crew-Cab Truck*, 810 F.2d 178 (8th Cir. 1987),] adopted the *Moreno* court's 'incidental connection' test.")). The court evaluates whether a defendant's relationship to the actual illegal entrance is "direct and substantial as to time, place, distance and overall impact . . . ." *Id.*

Felix Paredes-Leon was not just "a third party employee only incidentally connected to the violation . . . ." *One 1982 Chevrolet Crew-Cab Truck*, 810 F.2d at 182. Felix Paredes-Leon was related to or friends with each of the van's occupants. Some of these individuals came to the United States illegally together. It appears Felix Paredes-Leon and the other unlawful aliens helped each other obtain employment with Allen Steel Construction. Felix Paredes-Leon first began working for Allen Steel Construction in 2004. He learned about the job from his brother, an unlawful alien working for the company. Certainly, helping one find and keep employment is conduct in furtherance of an unlawful alien's illegal presence in the United States. Furthermore, working for Allen Steel Construction was more than just a job for these workers. Working for Allen Steel Construction meant an employee had a place to live, food and transportation. This job was ideal for unlawful aliens.

While Felix Paredes-Leon's relationship to the actual illegal entry of Hector Murrieta-Paredes and Luis Colorado-Grajales is not as strong in terms of time, place and distance, it is substantially related in terms of overall impact. The court finds that there was sufficient evidence for the jury to find Felix Paredes-Leon transported Hector Murrieta-Paredes and Luis Colorado-Grajales intending to help them remain in the United States illegally.

In light of the foregoing, the court finds that there was sufficient evidence for the jury to find Felix Paredes-Leon committed the crime of transporting illegal aliens. Accordingly, the first element of Count 1 is satisfied.

### b.    Second element

The court now turns to the second element of aiding or abetting the transportation of illegal aliens: that, for the purpose of commercial advantage or private financial gain, Defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about.

In aiding and abetting cases, the evidence must show that the defendant shared the principal's criminal intent. *United States v. Santana*, 524 F.3d 851, 855 (8th Cir. 2008) (citations omitted); Final Jury Instructions at 16. If the principal offense requires a particular mental state, the aider and abettor must share that mental state. *United States v. Lard*, 734 F.2d 1290, 1298 (8th Cir. 1984). Accordingly, the government was required to prove that Defendant knew, or recklessly disregarded the fact that, at least one of the van's occupants was not lawfully in the United States and, that for the purpose of commercial advantage or private financial gain, this occupant was transported or moved with the intent to help him remain in the United States illegally. *Id.*

Defendant asserts that the evidence at trial was insufficient to establish he knew or recklessly disregarded the fact that Hector Murrieta-Paredes and Luis Colorado-Grajales were illegally in the United States. Defendant asserts that the record is "completely devoid of any evidence that Defendant knew that any of the employees of Allen [Steel] Construction were illegally in the United States" and "[t]hus, the only remaining question is whether he recklessly disregarded the fact that they were illegal." Brief in Support of Motion (docket no. 81-2), at 6. Defendant asserts that, "[a]t best and in a light most favorable to the government, the government showed that [] Defendant was mistaken, careless or negligent . . . ." *Id.* at 8-9. The government asserts that "Defendant's actions and inactions show he turned a blind eye to Luis [Colorado-Grajales], Hector [Murrieta-Paredes] and others [that] were illegal aliens. This was not just negligence or a mistake." Resistance at 28.

In the case at bar, Allen Steel Construction was missing proof of identification and

employment documents for much of their workforce—not just the Hispanic workers. Allen Steel Construction provided hotel accommodations for all of its traveling crew members—not just the Hispanic workers. Taxes were withheld from everyone's wages. All workers were paid either by cash or check irrespective of their nationality. Luis Colorado-Grajales, Hector Murrieta-Paredes and Felix Paredes-Leon all testified that they believed they were treated and paid fairly. They testified that all workers were treated the same. *Cf. United States v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008) (holding circumstances supported inference that the defendants knew the aliens were unauthorized where (1) defendant had employment applications, W-2s and W-4s for all employees except the aliens; (2) the aliens were paid in cash and below minimum wage while the other employees were paid by check; (3) taxes and unemployment insurance premiums were withheld from all employees' earnings except the aliens; (4) defendants provided an apartment for the aliens but not the other employees; and (5) the aliens were hired at a truck stop whereas the other employees were hired in the restaurant itself).

The employees were more than just "human cargo" to Defendant—they were his co-workers with whom he spent a considerable amount of time. *United States v. Stonefish*, 402 F.3d 691, 696 (6th Cir. 2005). Defendant did not take "considerable pains" to conceal his interactions with the Hispanic workers. *Id*. In fact, he stayed at the same hotels and rode in the same vehicles as the Hispanic workers. He ate at restaurants with the Hispanic workers and cashed the Hispanic workers' paychecks. There was no evidence that Defendant actively sought out illegal workers or found them roaming the highways or at truck stops. *Cf. United States v. Shaddix*, 693 F.2d 1135, 1137 (5th Cir. 1982); *Tipton*, 518 F.3d at 594.

The evidence also indicates Defendant was unable to communicate with many of the Hispanic workers due to the language barrier. It seems that their communications were limited to their tasks and very casual conversation about family and friends. There was

no evidence that Defendant was able to communicate with these workers to even inquire about their immigration status.

The government stresses that Defendant had "a pattern of hiring illegal aliens without asking for any identification or other papers." Resistance at 28. However, S/A Harahap testified that the situation is "confusing" in terms of who was responsible for getting the employment forms. This confusion is due to the fact that some of the illegal aliens said they worked for Defendant but were paid by Bruce Allen, while some workers claimed they worked for Allen Steel Construction. The evidence indicates that Defendant was a foreperson or supervisor of a crew for Allen Steel Construction and also had his own business. Defendant appears to have had some managerial responsibilities with respect to hiring his crew. It is unclear, however, as to who was responsible for ensuring the employees were authorized to work. At least three of the employees had been hired and were working for Allen Steel Construction prior to Defendant's involvement. Government Exhibit 6-G was a note to Defendant instructing him that he needed to obtain certain forms from certain employees. The note was silent about obtaining proof of identification. Government Exhibit 6-J was a list of employees, forms and types of identification. It is not dated, but, it contains a reference to "9 New Guys." Government Exhibit 6-J. Allen Steel Construction recruited a group of new workers following the September 26, 2007 arrests, so it is likely the letter was sent after the arrests.

Although the evidence in this case does not involve some of the more obvious indicators of knowledge on behalf of Defendant, the court is required to view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *Peters*, 462 F.3d at 957. The Hispanic workers spoke little or no English. While the court indicated at trial in response to Defendant's Oral Motion that this was not sufficient evidence by itself, when viewed in the light most favorable to the government and combined with the other evidence, it is indicative of Defendant's

knowledge of the immigration status of Hector Murrieta-Paredes and Luis Colorado-Grajales. Defendant also referred to the Hispanic workers as "Mexicans." While this may not be the most politically correct way to reference Hispanic individuals, when viewed in the light most favorable to the government, it is also telling of Defendant's knowledge because it suggests Defendant knew certain workers were from Mexico. The evidence also indicates that Defendant could not communicate with many of the Hispanic workers due to the language barrier. The jury could have used this evidence to decide that Defendant recklessly disregarded certain employees' immigration statuses and that Defendant should have asked for or used the services of a translator to ensure the workers were authorized to work. The jury could have drawn an inference and decided that Defendant never asked because he did not want to know. In fact, when asked if Defendant requested "an American driver's license," Felix Paredes-Leon testified "I told him I had a Mexican one." Court Exhibit 10A at 19. Further, there was evidence Defendant was asked to obtain completed forms (Government Exhibit 6-G) from workers.

Also indicative of Defendant's knowledge is the fact that he occasionally cashed paychecks for his employees. In the Motion, Defendant asserts that he did so because the workers did not have bank accounts and could not speak English to communicate with bank tellers. The government urges that Defendant cashed the checks because Defendant knew the workers did not have proper identification. Again, when the court views this evidence in the light most favorable to the government, it indicates that Defendant may have known the workers were in the United States illegally.

Additionally, ICE agents found numerous receipts for money transfers from the Hispanic workers to recipients in Mexico in both the truck Defendant drove and the hotel rooms at the Winnavegas Inn. While knowledge that the Hispanic workers were sending money to recipients in Mexico is not in itself proof that Defendant knew the workers were in the United States unlawfully, it is another piece of circumstantial evidence tending to

show Defendant knew or acted in reckless disregard of the fact that Hector Murrieta-Paredes and Luis Colorado-Grajales were in the United States unlawfully.

Perhaps the most critical evidence of Defendant's knowledge is in his statements to S/A Rocha. On October 17, 2007, S/A Rocha and S/A Michael Ruskin interviewed Defendant. Regarding the interview, S/A Rocha testified at trial:

> We asked [Defendant] how many employees he currently had. He said he had 15 to 16 employees. We also asked him if he had filled out form I-9s and the W-4 forms on all these employees. He said yes. We also asked him if he asked for identification documents for all the employees—all his employees. He said yes. We asked him if he employed illegal aliens. He said no, he did not employ illegal aliens. We asked him how long he's been working for Allen Steel Construction. He said three to four years. We asked him—I think—I believe the last question we asked him was if he cashed checks for his employees. He said, "Yes, I would go cash them at the bank for them."

Tr. at 140.[4] Attorney Tiefenthaler did not cross-examine S/A Rocha with respect to these statements. Certainly, evidence that Defendant asked all of his employees for identification speaks to his knowledge that Hector Murrieta-Paredes and Luis Colorado-Grajales were in the United States unlawfully. The jury could have found this statement to be an admission that he only received identification issued from Mexico or as a lie in view of the fact that the workers testified they did not have proper identification.

Defendant correctly points out that the evidence of his knowledge is thin. However, there is rarely direct evidence of a defendant's knowledge. *See Shaddix*, 693 F.2d at 1138 ("'Because no one has a window to a man's mind, knowledge must often be proved by indirect evidence.'") (quoting *United States v. Richards*, 638 F.2d 765, 769 (5th Cir.

---

[4] The court realizes that this testimony is the subject of the Motion to Correct, however, the court has verified the record and finds the transcript is accurate with respect to S/A Rocha's testimony.

1981)). Where the evidence is devoid of the traditional indicators of knowledge, so long as a reasonable-minded jury could have found Defendant's guilt as to this element beyond a reasonable doubt, the court is obligated to uphold the jury's verdict. *Peters*, 462 F.3d at 957. "'A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" *United States v. Boeson*, 491 F.3d 855 (8th Cir. 2007) (quoting *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 1999)). Although the issue is close, a reasonable-minded jury could have found Defendant's guilt as to this element beyond a reasonable doubt for the reasons stated above.

Next, the court evaluates Defendant's purpose in aiding and abetting Felix Paredes-Leon. Again, the terms "commercial advantage" and "private financial gain . . . are ascribed their 'ordinary or natural meaning.'" *Zheng*, 306 F.3d at 1085 (citing *Nat'l Coal Ass'n*, 81 F.3d at 1081). Defendant told S/A Rocha that he worked for Allen Steel Construction and was currently working at the Western Iowa Co-op for Allen Steel Construction. He told S/A Rocha that he was responsible for fifteen to sixteen employees. The evidence shows that Defendant was responsible for keeping track of the workers' hours, wages, advances, meals, lodging and tools. The workers were in Mapleton for the purpose of working for Allen Steel Construction under Defendant's supervision. Although there was a significant language barrier, Defendant communicated with the workers regarding their tasks. Although the government did not produce Defendant's W-2, W-4 or other proof of earnings, the jury was entitled to infer Defendant was paid for his work for Allen Steel Construction either as an employee or independent contractor. Certainly, Defendant needed and intended the crew to be transported to work sites. Accordingly, the court finds that Defendant shared Felix Paredes-Leon's purpose of commercial advantage or private financial gain.

Finally, there was sufficient evidence that Defendant intentionally associated himself

in some way with Felix Paredes-Leon's transportation of illegal aliens and intentionally participated in that transportation as he would in something he wished to bring about. As discussed above, Defendant shared Felix Paredes-Leon's criminal intent. In his capacity as a foreperson, Defendant was responsible for Felix Paredes-Leon and the other van occupants. Defendant supervised them at work, made travel and hotel arrangements and kept track of their hours, wages and draws. Terri Horsley, general manager of the Winnavegas Inn, knew him as the "contact person" for the Allen Steel Construction crew. Tr. at 19. The workers were being transported for purposes of their work with Allen Steel Construction. Defendant's actions clearly indicate his desire that these workers be transported and remain in the United States.

Accordingly, the court holds that a reasonable jury could have found beyond a reasonable doubt Defendant aided and abetted the transportation of illegal aliens. The court shall deny the Motion for Judgment of Acquittal with respect to Count 1.

### 2. Count 3

Count 3 charged Defendant with Harboring Illegal Aliens For the Purpose of Commercial Advantage or Private Financial Gain. To prove Count 3, the government had to prove:

*One*, Hector Murrieta-Paredes was an alien;

*Two*, Hector Murrieta-Paredes entered or remained in the United States unlawfully;

*Three*, [Defendant] knew, or recklessly disregarded the fact, that Hector Murrieta-Paredes was not lawfully in the United States;

*Four*, [Defendant] concealed, harbored or shielded from detection Hector Murrieta-Paredes; and

*Five*, for the purpose of commercial advantage or private financial gain, [Defendant] intended the concealment, harboring or shielding from detection

to facilitate Hector Murrieta-Paredes's continued illegal presence.

Final Jury Instructions at 18-19; 10th Cir. Jury Instr. 2.04 (2006); 8 U.S.C. § 1324(a)(1)(A)(iii); *see United States v. Benitez-Augustin*, 61 F. App'x 337, 339 (9th Cir. 2003) ("Harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), requires the [g]overnment to prove the following: 1) a person was an alien; 2) the alien was not lawfully in the United States; 3) the defendant knew or was in reckless disregard of the fact that the person was not lawfully in the United States; and 4) the defendant concealed, harbored or shielded the person from detection.).

The first and second elements are not disputed. Hector Murrieta-Paredes testified that he is a citizen of Mexico. He testified that he entered the United States illegally in March of 2007. S/A Rocha verified that each of the van occupants arrested on September 26, 2007, including Hector Murrieta-Paredes, was in the United States unlawfully. There was sufficient evidence for the jury to find Hector Murrieta-Paredes was an alien who entered and remained in the United States illegally.

With respect to the third element, as Part B.1.b. *supra* demonstrates, there was sufficient evidence for the jury to find that Defendant knew or recklessly disregarded the fact that Hector Murrieta-Paredes was not lawfully in the United States. Again, the court finds the issue of Defendant's knowledge to be close. However, the court is required to view the evidence in the light most favorable to the government and to give the government the benefit of all reasonable inferences. *Peters*, 462 F.3d at 957. Under this standard, the court finds that there was sufficient evidence for the jury to find Defendant knew or recklessly disregarded the fact that Hector Murrieta-Paredes was not lawfully in the United States.

Hector Murrieta-Paredes did not speak English. He communicated with Defendant through another worker. He also learned of the job with Allen Steel Construction through

an undocumented worker, Felipe Paredes-Leon.  The jury could assume Hector Murrieta-Paredes was in the group of workers Defendant referred to as "Mexicans."  Hector Murrieta-Paredes's only form of identification was a driver's license issued from a state in Mexico.  According to S/A Rocha, Defendant stated that he asked all of his employees for identification.  Hector Murrieta-Paredes worked for Allen Steel Construction for approximately four to five months.  During this time, he saw Defendant every day.  He testified that he did not have a bank account.  He testified that the one time he was paid by check, Defendant helped him cash it.  Although Defendant's Exhibits D and E (Hector Murrieta-Paredes's W-4 and W-2) were produced, there was no evidence Hector Murrieta-Paredes completed an I-9.  Although the issue is close, the court finds there was sufficient evidence for the jury to find that Defendant knew or recklessly disregarded the fact that Hector Murrieta-Paredes was in the United States unlawfully.

With respect to the fourth element, the court finds that there was sufficient evidence for the jury to conclude Defendant concealed, harbored or shielded Hector Murrieta-Paredes from detection.  The jury was instructed that:

> "Harboring" means any conduct tending to substantially facilitate an alien's remaining in the United States illegally, including but not limited to giving shelter, providing housing, providing employment and/or providing rides to a place of employment . . . .  "[S]hielding from detection" includes any conduct which prevents immigration officials from identifying, locating or apprehending an alien . . . .  "[C]oncealing" means any conduct which impedes the ability of immigration officials from identifying, locating or apprehending an alien.

Final Jury Instructions at 19-20; 8 U.S.C. § 1324(a)(1)(A)(iii); *see, e.g., United States v. Ozcelik*, 527 F.3d 88, 99 (3d Cir. 2008) (quoting *United States v. Kim*, 193 F.3d 567, 574 (2d Cir. 1999)) ("'[H]arboring . . . encompasses conduct tending substantially to facilitate an alien's remaining in the United States illegally and to prevent government authorities from detecting his unlawful presence.'"); *United States v. Rubio- Gonzales*, 674 F.2d

1067, 1073 (5th Cir. 1992) (approving of jury instruction that defined "harboring" as "any conduct tending to substantially facilitate an alien's remaining in the United States illegally."); *United States v. Seferi*, No. 06-CR-28-LRR (N.D. Iowa May 11, 2006) (docket no. 52), at 14 (instructing the jury that "harboring" includes "providing employment" to an unlawful alien), *aff'd sub nom. United States v. Tipton*, 518 F.3d 591 (8th Cir. 2008). Defendant provided housing, employment and transportation for Hector Murrieta-Paredes. Defendant provided Hector Murrieta-Paredes with draws from his paychecks for living expenses. When Hector Murrieta-Paredes was paid by check rather than in cash, Defendant helped him cash his paycheck. This conduct undoubtedly substantially facilitated Hector Murrieta-Paredes's ability to remain in the United States illegally.

Fifth, there was sufficient evidence for the jury to find that for the purpose of commercial advantage or private financial gain, Defendant intended the concealment, harboring or shielding from detection to facilitate Hector Murrieta-Paredes's continued illegal presence in the United States. Defendant supervised the workers either in his capacity as a foreperson for Allen Steel Construction or as an independent contractor. In either capacity, Defendant's intent was to earn a living. This was his job. The jury was entitled to infer that Defendant was paid for his work.

Defendant also intended his actions to facilitate Hector Murrieta-Paredes's continued illegal presence in the United States. "[T]o 'substantially facilitate' means to make an alien's illegal presence in the United States 'easier or less difficult.'" *United States v. Shum,* 496 F.3d 390, 392 (5th Cir. 2007) (quoting *United States v. Dixon*, 132 F.3d 192, 200 (5th Cir. 1997)). Certainly, providing employment, housing and transportation substantially facilitated Hector Murrieta-Paredes's ability to remain in the United States illegally. *See Tipton*, 518 F.3d at 595 ("A jury could reasonably conclude that [the defendants] harbored these aliens by granting them employment, by providing the aliens

a place to live, daily transportation, and money to purchase necessities . . . ."). All of these actions made Hector Murrieta-Paredes's ability to stay illegally in the United States easier. Hector Murrieta-Paredes had a full time job enabling him to make money. He did not have to find a place to live because Defendant helped to arrange housing. He did not have to purchase a vehicle or find other means of transportation because Defendant helped to provide rides. Defendant would even cash a paycheck for Hector Murrieta-Paredes when needed. A reasonable jury could have found that Defendant's actions were intended to facilitate Hector Murrieta-Paredes's continued illegal presence in the United States.

Accordingly, the court holds that there was sufficient evidence for the jury to find Defendant concealed, harbored or shielded Hector Murrieta-Paredes from detection for the purpose of commercial advantage or private financial gain. The court shall deny the Motion for Judgment of Acquittal with respect to Count 3.

### 3.    *Count 4*

Count 4 charged Defendant with Harboring Illegal Aliens for the Purpose of Commercial Advantage or Private Financial Gain. To prove Count 4, the government had to prove:

*One*, Luis Colorado-Grajales was an alien;

*Two*, Luis Colorado-Grajales entered or remained in the United States unlawfully;

*Three*, the defendant knew, or recklessly disregarded the fact, that Luis Colorado-Grajales was not lawfully in the United States;

*Four*, the defendant concealed, harbored or shielded from detection Luis Colorado-Grajales; and

*Five*, for the purpose of commercial advantage or private financial gain, the defendant intended the concealment, harboring or shielding from detection to facilitate Luis Colorado-Grajales's continued illegal presence.

Final Jury Instructions at 19; 10th Cir. Jury. Instr. 2.04 (2006); 8 U.S.C. § 1324(a)(1)(A)(iii); *Benitez-Augustin*, 61 F. App'x at 339.

The first and second elements are not disputed. Luis Colorado-Grajales testified that he is a citizen of Mexico and entered the United States illegally in April of 2007. S/A Rocha verified that each of the van occupants arrested on September 26, 2007, including Luis Colorado-Grajales, was in the United States unlawfully. The court finds that there was sufficient evidence for the jury to find Luis Colorado-Grajales was an alien who entered or remained in the United States unlawfully.

With respect to the third element, as Part B.1.b. *supra* demonstrates, there was sufficient evidence for the jury to find that Defendant knew or recklessly disregarded the fact that Luis Colorado-Grajales was not lawfully in the United States. Again, the court finds the issue of Defendant's knowledge to be close. However, the court is required to view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *Peters*, 462 F.3d at 957. Under this standard, the court finds that there was sufficient evidence for the jury to find Defendant knew or recklessly disregarded the fact that Luis Colorado-Grajales was not lawfully in the United States.

Luis Colorado-Grajales testified that he did not know much English. Luis Colorado-Grajales learned about a job with Allen Steel Construction through another unlawful alien, Felipe Paredes-Leon. It appears Defendant hired Luis Colorado-Grajales in Flandreau, South Dakota. Luis Colorado-Grajales testified that Defendant had him fill out an "application" that asked him how many dependents he had. He testified that he was not required to show identification for the job. At this time, his only form of identification was a voter registration card from Mexico. While working in Mapleton, Luis Colorado-Grajales saw Defendant every day. Luis Colorado-Grajales also worked with Defendant in Sioux Falls, South Dakota. He testified that for this work he was paid by check after

each bin was completed. He testified that Defendant took him to a bank to cash his checks. Although Defendant's Exhibits D and E indicate Luis Colorado-Grajales completed a W-4 and W-2, there was no evidence Luis Colorado-Grajales completed an I-9. The court finds that there was sufficient evidence for the jury to find that Defendant knew or recklessly disregarded the fact that Luis Colorado-Grajales was not lawfully in the United States.

Fourth, the government had to prove Defendant harbored, concealed or shielded Luis Colorado-Grajales from detection. The jury was instructed on the definition of harboring set forth above. Final Jury Instructions at 19-20. Defendant provided housing, employment and transportation for Luis Colorado-Grajales. Luis Colorado-Grajales testified he did not have transportation of his own. Defendant gave Luis Colorado-Grajales draws from his paychecks for living expenses. When Luis Colorado-Grajales was paid by check rather than cash, Defendant took him to a bank and helped him cash it. This conduct substantially facilitated Luis Colorado-Grajales's ability to remain in the United States illegally. The court finds that there was sufficient evidence for the jury to find Defendant harbored, concealed or shielded Luis Colorado-Grajales from detection.

Fifth, there was sufficient evidence for the jury to find that, for the purpose of commercial advantage or private financial gain, Defendant intended the concealment, harboring or shielding from detection to facilitate Luis Colorado-Grajales's continued illegal presence. Defendant supervised Luis Colorado-Grajales either in his capacity as a foreperson for Allen Steel Construction or an independent contractor. In either capacity, Defendant's intent was to earn a living. The jury was entitled to infer Defendant was paid for his work.

Defendant also intended his actions to facilitate Luis Colorado-Grajales's continued illegal presence in the United States. "[T]o 'substantially facilitate' means to make an alien's illegal presence in the United States 'easier or less difficult.'" *Shum,* 496 F.3d at

392 (citing *Dixon*, 132 F.3d at 200). For the same reasons stated above with respect to Hector Murrieta-Paredes, providing employment, housing and transportation substantially facilitated Luis Colorado-Grajales's remaining in the United States illegally. Defendant needed workers for his crew and had an interest in keeping them in the United States. Luis Colorado-Grajales had a full-time job enabling him to make money. He did not have to find a place to live because Defendant provided housing. He did not have to purchase a vehicle or find other means of transportation because Defendant provided rides. Defendant would even cash a paycheck for Luis Colorado-Grajales if needed. The jury could reasonably conclude that Defendant's actions were intended to facilitate Luis Colorado-Grajales's continued illegal presence in the United States.

Accordingly, the court holds that there was sufficient evidence for the jury to find Defendant concealed, harbored or shielded Luis Colorado-Grajales from detection. The court shall deny the Motion for Judgment of Acquittal with Respect to Count 4.

### C. Consistent Verdicts

Defendant argues that he is entitled to a judgment of acquittal because the verdicts are inconsistent. As a preliminary matter, the court notes that Defendant did not provide legal authority for this argument. Even if the court assumes this a proper ground for acquittal, the facts and circumstances surrounding the counts of acquittal and the counts of conviction are distinguishable.

The jury acquitted Defendant of transporting Felix Paredes-Leon, Hector Murrieta-Paredes and Luis Colorado-Grajales as charged in Count 1. However, the jury was instructed that they could find Defendant guilty under Count 1 for aiding and abetting the transportation of an illegal alien. The only evidence the government presented that Defendant actually transported an illegal alien was that Jose Alfredo Sandoval-Rincon was in the truck Defendant was driving when agents executed the search warrant. Agents found a passport, social security card and permanent resident card for Jose Alfredo

Sandoval-Rincon (Government Exhibit 5-B-6) in Room 107 at the Winnavegas Inn. The government did not present evidence that indicated Defendant knew about these documents. In a nutshell, evidence of Defendant's guilt with respect to the transporting charge in Count 1 was weaker than evidence relating to the counts of conviction.

In contrast, as discussed in Part IV.B.1. *supra*, the evidence indicating that Felix Paredes-Leon committed the crime of transporting illegal aliens was quite strong. Felix Paredes-Leon was driving the van with eight other undocumented workers. Every occupant of that van was arrested on September 26, 2007. These individuals were either related to or friends with Felix Paredes-Leon. Felix Paredes-Leon was driving the vehicle as part of his employment for Allen Steel Construction. Working for Allen Steel Construction meant housing, transportation, meals and a paycheck—all of which made it significantly easier for certain workers to stay in the United States unlawfully. Defendant was responsible for these workers and supervised them. The evidence was much stronger with respect to the aiding and abetting charge in Count 1, and the jury's verdict is consistent with the evidence.

The jury acquitted Defendant of harboring Felix Paredes-Leon, as charged in Count 2 of Indictment. Defendant produced an I-9 for Felix Paredes-Leon dated June 6, 2007. Felix Paredes-Leon worked for Allen Steel Construction before he started working with Defendant. In contrast, I-9s were not produced for Hector Murrieta-Paredes or Luis Colorado-Grajales. Hector Murrieta-Paredes and Luis Colorado-Grajales were also not employees of Allen Steel Construction prior to working for Defendant.

The jury also acquitted Defendant of transporting Jose Alfredo Sandoval-Rincon, as charged in Count 5 of the Indictment. Again, agents found a passport, social security card and permanent resident card for Jose Alfredo Sandoval-Rincon (Government Exhibit 5-B-6) in Room 107 at the Winnavegas Inn. The government did not present evidence that indicated Defendant knew of these documents. In contrast, no United States identification

of any kind was located for Hector Murrieta-Paredes or Luis Colorado-Grajales.

In sum, the facts surrounding the transportation theory of Counts 1 and 5 are distinguishable from the facts surrounding the counts of conviction, and the verdicts are consistent with these distinctions.

### D. Conclusion

In light of the foregoing, the court shall deny the Motion for Judgment of Acquittal. There was sufficient evidence for a reasonable-minded jury to find Defendant guilty of Counts 1 (aiding and abetting alternative), 3 and 4 beyond a reasonable doubt.

### V. MOTION FOR NEW TRIAL

Defendant moves for a new trial on two grounds; (1) the verdicts are against the weight of the evidence and (2) newly discovered evidence. The government asserts that the verdicts are supported by the evidence and that Defendant's argument regarding new evidence is untimely. Further, the government argues that the evidence in question was not newly discovered.

Generally, "additional grounds raised in amendments, supplements or renewals of a timely motion for new trial are procedurally barred if not asserted within the seven-day time limit unless the district court grants an extension before the original seven-day period has expired." *United States v. Villalpando*, 529 F.3d 934, 938 (8th Cir. 2001) (citing *United States v. Flynn*, 196 F.3d 927, 931-32 (8th Cir. 1999)). However, "[w]here a reasonable construction of the facts can be made, 'so as to allow the defendant[] sufficient time for filing to avoid a jurisdictional time bar, [the] court should make such a construction.'" *United States v. Cruz-Padilla*, 227 F.3d 1064, 1067 (8th Cir. 2000) (quoting *United States v. Johnson*, 982 F.2d 1192, 1198 (8th Cir. 1992)). "[A]pplying such rigidity . . . would merely subordinate the defendant's right to a fair trial while effecting no meaningful rule-based purpose." *Villalpando*, 529 F.3d at 938.

In the case at bar, the court gave the parties until February 9, 2009, to file post-trial

motions. The parties complied with this deadline. Defendant filed the Motion to Correct on February 10, 2009, the day after Attorney Tiefenthaler realized S/A Rocha testified incorrectly and that the government relied on this testimony.[5] The bases set forth in the Motion to Correct are sufficiently similar to and, in effect, supplement the Motions. Failing to consider these additional arguments would adversely affect Defendant's right to a fair trial. Accordingly, the court shall consider Defendant's claims set forth in both the Motion for New Trial and Motion to Correct.

However, upon review of the Motion for New Trial and the grounds for new trial set forth in the Motion to Correct, the court finds that the arguments are more appropriately construed as a claim of Ineffective Assistance of Counsel. *See Villalpando*, 259 F.3d at 938 ("Normally, a collateral postconviction action under 28 U.S.C. § 2255 is the appropriate means for raising a claim of ineffective assistance of counsel and for developing a record sufficient to examine counsel's performance." *United States v. Jackson*, 204 F.3d 812, 813 (8th Cir. 2000). "The district court, however, may consider the claim on a motion for new trial if it has developed an adequate record on the issue." *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998)). S/A Rocha's testimony that Defendant admitted to asking all employees for identification went un-challenged even though this statement directly contradicted S/A Rocha's previous sworn testimony. Defense counsel failed to cross-examine a piece of critical evidence relating to an essential element of the counts of conviction. As discussed throughout Part IV. *supra*, this piece of evidence likely weighed heavily in the jury's analysis of Defendant's guilt.

Defendant is essentially asserting that Attorney Tiefenthaler's failure to cross examine this inconsistent testimony resulted in a miscarriage of justice, and as such, a new trial is warranted. The court is also concerned that the Indictment may have been obtained

---

[5] Although, as a practical matter, Attorney Tiefenthaler should have "discovered" S/A Rocha's inconsistency when he testified during trial. Motion to Correct at 3.

as a result of testimony by the case agent that was incorrect and misleading. In light of these findings, the court reserves ruling on the Motion for New Trial. The court shall hold a hearing with respect to the ineffective assistance of counsel claim on the date and time set forth below.

## VI. MOTION TO CORRECT RECORD

Defendant moves for the court to correct the record. Defendant did not provide authority for the court to correct the record. Nevertheless, the court reviewed the trial transcript and audio recording and finds that the record accurately reflects S/A Rocha's trial testimony. Accordingly, the court shall deny the Motion to Correct Record.

## VII. CONCLUSION

In light of the foregoing, the court **ORDERS:**

(1) The Motion for Judgment of Acquittal is **DENIED;**

(2) Ruling on the Motion for New Trial is **RESERVED;**

(3) The Motion to Correct is **DENIED;**

(4) A hearing is set for **May 27, 2009, at 2:00 p.m.,** before the undersigned in the First Floor Courtroom, United States Courthouse, 320 Sixth Street, Sioux City, Iowa; and

(5) For the purposes of the hearing, Defendant shall retain new counsel or the CJA Panel Administrator will appoint an attorney from the CJA Panel. Defendant shall notify the court in writing whether he will hire his own attorney or desires to apply for a CJA Panel Attorney if he qualifies for court-appointed counsel due to indigence by **May 18, 2009.**

**IT IS SO ORDERED.**

**DATED** this 13th day of May, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA